448 So.2d 1268 (1984)
Elsie Mae JONES
v.
Calvin SOILEAU.
No. 83-C-1966.
Supreme Court of Louisiana.
February 27, 1984.
*1269 Preston N. Aucoin, Gilbert Wayne Aucoin, Ville Platte, for applicant.
Richard W. Vidrin, Fruge & Vidrine, Ville Platte, Jonathan C. Harris, Baton Rouge, amicus curiae, for respondents.
DIXON, Chief Justice.
Elsie Mae Jones filed suit to recover damages from Calvin Soileau for the latter's alleged malicious prosecution of Jones on four counts of issuing worthless checks. The trial court rendered judgment in her favor and awarded her $25,000 in damages. *1270 The court of appeal reversed, finding that there was probable cause to prosecute in the original case. 435 So.2d 503 (La.App. 1983). We reverse.
Jones is elderly, disabled and has a seventh grade education. She lives in Ville Platte on Supplemental Security income ($208.00 per month) and food stamps ($33.00 per month). Soileau owns Cal's Grocery in Ville Platte. He is the city marshal, now in his third six year term. In October of 1979, Jones requested that Soileau allow her to buy groceries each month on credit. He agreed to do so if she would sign a counter check provided by him from a local bank for the amount of the purchase. Then, when Jones received her SSI check, he would cash it at the store, and hold out the balance due, and return the checks. Soileau testified that he told her he would institute criminal proceedings if she failed to pay at the first of the month. Soileau called these checks "hold checks." Soileau's wife, who managed the store, testified that this system, as well as Soileau's traditional use of an account book, were simply ways of accounting for the purchases and charges of each credit customer.
Both parties testified that the question of whether Jones had an account at the bank never arose. Neither Soileau nor his employees ever filled in the space provided in the checks for an account number. No one ever asked her for one.
This system worked satisfactorily for several months. In February, 1980, however, Jones' gas bill was $145.00, and she was ill and required medication. She also used her privilege on February 27 at Soileau's store to get $100.00. Soileau charged her $10.00 interest for the last two days of February. She did not pay her February bill.
Some weeks later, Soileau deposited the checks. They were returned; there was no account as drawn. In May, 1980, he sent her demand notices. These notices were pre-printed, containing blanks for a name, date, amount of check and the reason for it not being honored. They stated that criminal charges would be filed if she did not pay within ten days. Soileau filled in the blanks and signed each form "Cal Soileau, City Marshal." The total amount of the four checks was $315.78.
Soileau then went to see Jones. She offered to pay him $30.00 a month. He insisted on being paid in full. Soileau also discussed the matter with the city judge in Ville Platte (with whom he worked as city marshal). According to Soileau, the city judge "transferred" the case to district court.[1] Soileau then went to Mr. Pucheu, the district attorney. After that, he talked to an assistant district attorney, Mr. Vidrine. Finally, on October 17, 1980, another assistant district attorney, Mr. Rozas, filed a bill of information charging Jones with four counts of issuing worthless checks in violation of R.S. 14:71.
Soileau's memory began to fail him when asked about his visits to first the city judge, then the district attorney, then his assistants. He remembered only that Pucheu told him that he had a good charge. Pucheu likewise had no recollection of the specifics of the meeting. Soileau testified that he would not have filed a formal complaint if he had not been told by the district attorney's office that the charge was a good one.
Trial was held some three weeks after the bill was filed. Counsel for Jones argued that the transaction involved an open account, not the issuing of worthless checks. The trial judge, however, ruled from the bench that the state had proved the elements of the crime beyond a reasonable doubt on three of the four counts. He dismissed one count because the check was signed by someone else "for Elsie Mae Jones." He sentenced Jones to ten days in jail on each of the three counts, the terms to run consecutively. In addition, he fined her $50.00 plus court costs. He suspended *1271 the sentence on the condition that she make restitution within ten days.
This court granted writs and reversed, finding the statute inapplicable because the transactions were in the nature of an open account. In addition, the court found insufficient proof of intent to defraud. State v. Jones, 400 So.2d 658 (La.1981).
In the present suit, the record of the criminal case was introduced into evidence, and the trial judge heard the testimony of both parties, Soileau's wife, and Pucheu. In his reasons for judgment, he referred to the previous conviction and sentence and the reversal by this court. He found a "wanton and reckless disregard" of Jones' rights by Soileau and that Soileau "failed to exercise the caution and inquiry required by law before filing criminal charges." Finding all the elements for the action to be established by the record, he awarded her $25,000 in damages.
The court of appeal reversed, holding that it would be anomalous to find that Soileau had no probable cause to file a complaint when the trial judge found Jones guilty beyond a reasonable doubt on three of four counts.
The jurisprudence of the state recognizes a civil cause of action, based on fault under C.C. 2315, in favor of one "whose liberty has been interfered with in an unwarranted manner." F. Stone, 12 La.Civil Law Treatise, Tort Doctrine, §§ 200-01, at 264-66 (1977). Like any other delict under C.C. 2315, such an "interference" must be based on fault of the defendant which causes the damage complained of in order for the plaintiff to recover. In Graf v. McCrory Corp., 368 So.2d 1217, 1218 (La.App.1979) (Lemmon, J.), the defendant refused to drop criminal charges unless the plaintiff would release it from civil liability. The court emphasized that the unreasonableness of the defendant's actions under these circumstances is the key to determining fault in a malicious prosecution case just as in any other case based on C.C. 2315-16.[2]
Nevertheless, in Eusant v. Unity Industrial Life Ins., 195 La. 347, 351-52, 196 So. 554, 556 (1940), the court, quoting from an encyclopedia, stated that the elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. This test has been reaffirmed by this court on several occasions, most recently in Hibernia National Bank v. Bolleter, 390 So.2d 842, 843 (La.1980).[3]
The first three elements, the court of appeal found, are satisfied. The court of appeal reversed the trial court with respect to probable cause because of certain evidentiary presumptions which are controlling in other states. Jones v. Soileau, 435 So.2d 503 (La.App.1983). Citing an encyclopedia and the Restatement of Torts, it held that probable cause was conclusively established by the previous conviction unless fraud, perjury or other corrupt means are shown. Id. at 506. See also W. Prosser, Law of Torts, § 119, at 846 (4th ed. 1971).
*1272 The applicable principles for determining probable cause were nevertheless correctly cited by the court of appeal from Coleman v. The Kroger Co., 371 So.2d 1186, 1188 (La.App.1979), writ denied, 372 So.2d 1041 (La.1979). The crucial determination is whether Soileau had an honest and reasonable belief in the guilt of Jones at the time he pressed charges. Sandoz v. Veazie, 106 La. 202, 30 So. 767 (1901). In applying these principles, a court may take into account events subsequent to the filing of the criminal charge. These are, however, simply additional pieces of evidence which comprise the entirety of the circumstances which it is the court's duty to review.[4] A previous conviction is no more "conclusive" on this issue than is the subsequent reversal by this court or the subsequent finding of no probable cause by the trial court in the present proceeding.[5]
In this case, the trial judge had the record of the criminal proceeding before him. In addition, he heard the live testimony of the parties and of their witnesses. Except for the "presumptions" adopted by the court of appeal, there could be no claim that he failed to give proper evidentiary value to the record of the criminal case.
Soileau must have known that Jones had no bank account. He conceived the scheme to provide himself with a credible threat for collection purposes. The facts could not have given rise to an honest and reasonable belief in the guilt of Jones. When the threat proved to be insufficient to obtain payment in full (she did offer to pay $30.00 a month), he began to take steps to make good on the threat by going from first one official to another to see about filing charges.
Louisiana courts have, however, extended a qualified immunity to a defendant who files charges after seeking the advice of an attorney. Johnson v. Pearce, 313 So.2d 812, 816 (La.1975); Eusant v. Unity Industrial Life Ins., supra. The immunity operates, however, only when the advice of the attorney is based on full disclosure of all facts. Eusant v. Unity Industrial Life Ins., supra. See also Bladg v. Giacomino, 170 La. 638, 128 So. 661 (1930).
In the present case, the trial judge must have concluded that such a full disclosure was not made and that Soileau did not seek advice in good faith. Bladg v. Giacomino, supra. Neither Soileau nor Pucheu remembered the substance of their conversations. Pucheu did testify that he knew that "hold checks" were not punishable under R.S. 14:71. He claimed, however, that a 1976 amendment to the statute would support a prosecution on the facts disclosed to him. The amendment (Acts 1976, No. 651) did away with the requirement of contemporaneous issuing of the check and delivery of the goods. The amendment, however, is irrelevant to the actual facts. In fact, the prosecutor in the criminal case established the contemporaneous signing of the "check" and the delivery of the goods or cash. Pucheu's interpretation of the 1976 amendment, despite Jones' defense from the beginning that this was an open account transaction, was never made in the criminal case, either at trial or before this court.
In light of the sketchy recall of both Soileau and Pucheu, the trial judge must have inferred that Soileau simply presented the three district attorneys with checks marked no account as drawn and asked if he could charge Jones with issuing worthless checks. Such an inference would be consistent with the theory which the state attempted to prove at trial. Therefore, the *1273 qualified immunity does not attach to Soileau's actions.
The fifth element is malice. It will be inferred when there is an absence of probable cause "... resulting from wanton and reckless disregard of the rights of the party sued, evincing absence of that caution and inquiry a party should employ before filing suit ..." Hibernia National Bank v. Bolleter, supra, at 844. Soileau knew that his ordinary civil remedies were of little value in attempting to collect from his customers who fell behind. So he created his own security device for the collection of debts on an open account. He signed the demand letters in his official capacity as city marshal. He then refused to negotiate with Jones and insisted on full payment. Such actions were clearly done with an intent to use the baseless criminal charge to collect from Jones. Hibernia National Bank v. Bolleter, supra. Under these circumstances, malice is inferred. Such an attempt to misuse an office of public trust for private ends, as well as to misuse the criminal process for the enforcement of civil claims, remains an intolerable abuse in this state.
The sixth element, damages, is also presumed when the other five elements are established. Hibernia National Bank v. Bolleter, supra. In the present case, the trial judge had "no doubt ... that plaintiff suffered extreme mental anguish, humiliation, embarrassment, etc. as she went through an entire criminal trial, resulting in a conviction and sentence, and that she is entitled to substantial damages for the malicious prosecution brought against her by the defendant." He then awarded her $25,000.
C.C. 1934(3) gives the trial judge "much discretion" in assessing damages in the case of an offense or quasi offense. This court will not disturb an award absent a clear abuse of discretion under the particular circumstances of the case. Reck v. Stevens, 373 So.2d 498 (La.1979). Damage awards, however, in malicious prosecution suits should be compensatory only. Robinson v. Goudchaux's, 307 So.2d 287, 291 (La.1975). There is no doubt that Jones suffered anguish and humiliation as a result of Soileau's actions. In an appropriate case, the trial judge's award would be proper. However, the record in this case does not support such an award. Much of the publicity apparently occurred when Jones filed this suit. No newspaper accounts or other documentation was introduced. Jones spent no time in jail and was never formally arrested. She testified that her blood sugar "acted up," but there was no other proof of this nor of any expenses which it may have caused. Her attorney's fees in the criminal action were not documented. In light of the record and the compensatory nature of the damage award in such cases, an award of $5,000 is adequate.
Accordingly, the judgment of the court of appeal is reversed, and judgment in the amount of $5,000 is rendered in favor of plaintiff Elsie Mae Jones and against defendant Calvin Soileau; costs are assessed against the defendant.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
I agree with the majority view of the states that the conviction of the accused by a trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause unless the conviction was obtained by fraud, perjury or other corrupt means. Accordingly, I respectfully dissent.
NOTES
[1] Nothing in the record reflects such a "transfer." At best, Soileau was likely told simply to take the matter up with the district attorney.
[2] In particular, this court, early in its history, held that "[t]he use of criminal process to enforce a civil claim is an intolerable abuse, even when the claim exists." Cannell v. Michel, 6 La.Ann. 577, 578 (1851). When the claim is essentially civil in nature, the proper approach is to seek redress in civil courts. Id. See also Graf v. McCrory Corp., supra; Lewin v. First Paratransit Corp., 387 So.2d 1254, 1256 (La.App. 1980); Joyner v. Weaver, 337 So.2d 635, 637 (La.App.1976) (Watson, J.). The abuse of the criminal process to enforce civil claims is even more reprehensible when an officer of the state or its subdivisions makes such a threat in his official capacity. This court recently disciplined a justice of the peace for precisely such abuses. In re Wilkes, 403 So.2d 35 (La.1981).
[3] As noted in Joyner v. Weaver, supra, at 636-37, the courts have expressed dissatisfaction with such "common law strictures" in light of the broad notion of fault under C.C. 2315. See also Leaman & Co. v. Victory Iron Works, 411 So.2d 666, 669 (La.App.1982).
[4] Grant v. Deuel, 3 Rob. 17 (1842), cited by the court of appeal, illustrates this principle and does not establish the common law presumptions as held by the court of appeal.
[5] The potential arbitrariness of mechanically applied, formal presumptions is clearly illustrated in the present case. The trial judge in the criminal case dismissed one of the four counts against Jones because the state failed to prove the authorization of the person signing the check for Jones. The presumption of probable cause would not attach as to this count, and a court could then theoretically reach the issue of probable cause and find for Jones on this count alone.