# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 12, 2012

No. 11-31125

Lyle W. Cayce
Clerk

JOSEPH BOWMAN CORMIER,

Plaintiff – Appellee

v.

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT; NOLVEY
STELLY, individually; HEATHER MARTIN, individually,

Defendants – Appellants

Appeals from the United States District Court
for the Western District of Louisiana
U.S.D.C. No. 6:09-CV-703

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants the Lafayette City-Parish Consolidated
Government ("Lafayette"), Officer Nolvey Stelly, and Officer Heather Martin
appeal from the district court's denial of qualified immunity in this action under
42 U.S.C. § 1983 and Louisiana law. The appeal comes after the district court
granted in part and denied in part a series of motions for summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-31125

Plaintiff-Appellee Joseph Bowman Cormier does not cross-appeal, leaving for this court's consideration only his § 1983 and state-law claims against Stelly and Martin, and state-law claims against Lafayette premised on the actions of prosecutor Gary Haynes. We conclude that Supreme Court precedent precludes Cormier's § 1983 claims against Stelly and Martin and that his state-law claims against the officers and Lafayette also fail. We therefore REVERSE and REMAND for proceedings consistent with this opinion.

## I. Facts and Procedural History

Cormier, a retired Lafayette police officer, owns property in Lafayette, Louisiana. The incident underlying this case occurred when Cormier called police to make a trespassing complaint. Martin and Officer Chase Guidry were dispatched in response. En route, they received a report of an altercation at Cormier's property between two people—a homeless person later identified as Greg Greer and, it appeared, Cormier—that ended with an armed Cormier chasing Greer from the property.

Martin arrived and began questioning Cormier about the alleged altercation. A verbal confrontation ensued. Martin claims that Cormier initially admitted to pushing Greer but denied having a weapon. After Sergeant Dewitt Sheridan arrived on the scene, Cormier purportedly admitted to having a pistol in the trunk of his car.

Sheridan reported the incident to his commander, who advised that Cormier should be released and an "offense report" generated. An "aggravated assault" call subsequently came in over the police radio. Martin went to the complainant's location and found Greer, who provided a written statement implicating Cormier in the alleged assault.

Sheridan arrived to assist Martin and reported Greer's story to his commander, who authorized the officers to issue Cormier a misdemeanor summons for simple battery. Martin and Sheridan subsequently learned that

2

No. 11-31125

Cormier was at the Lafayette Police Department building. They returned to headquarters, found Cormier in the front lobby, and asked him to step outside. Stelly followed. Martin issued Cormier a summons for simple battery in violation of Lafayette Ordinance 62-67 (the "Summons") and released him.

For his part, Cormier alleges that Martin suddenly and inexplicably "falsely arrested [him] without probable cause, and by means of a false affidavit, falsely accus[ed] [him] of committing the crime of simple battery," as officers Guidry and Stelly watched.[1] Cormier complained to the police chief about the incident. As part of the ensuing investigation, Martin prepared a statement about the events describing why she believed that Cormier should have been arrested for aggravated assault.

Several months later, this statement was given to a local television station after Cormier qualified to run for City Marshall against Earl "Nickey" Picard, a longtime incumbent. A subsequent Lafayette Police Department inquiry determined that Martin turned over her statement, the Summons, and witness statements to Deputy City Marshal Timothy Picard at his request and ostensibly on behalf of the City Prosecutor's Office. The investigation concluded that Martin unintentionally included her statement with the Summons materials and had no idea that it would be given to the media.

Prosecutor Haynes soon after filed a bill of information charging Cormier with aggravated assault. The day before the election, the news station ran a follow-up story on Cormier's case noting the newly added charge. The story allegedly reported that a conviction would require Cormier's removal from office if elected. Cormier lost the election.

He went to trial on the aggravated-assault and simple-battery charges, but the charges were dismissed when Greer and another witness failed to appear.

---

[1] The parties agree that Cormier was "arrested" when Martin issued the Summons.

3

No. 11-31125

The prosecutor then-assigned to the case, Shane Mouton, filed a superseding information charging Cormier with disturbing the peace. Cormier ultimately was convicted on that charge. He received a $130 fine, six months' probation, and a suspended sentence of ten days in jail. He unsuccessfully appealed his conviction and sentence in the Louisiana appellate courts.

Cormier filed the instant action in federal court within days of his trial. In it, he brings § 1983 claims and state-law claims for defamation, malicious prosecution, false imprisonment, intentional infliction of emotional distress, and negligent supervision against Lafayette, the Picards, Haynes, Mouton, Stelly, Martin, and Guidry.[2]

The district court granted summary judgment for Haynes and Mouton,[3] concluding that both prosecutors were entitled to absolute immunity. In doing so, the district court noted that Cormier had introduced no evidence of Haynes's wrongdoing. The district court also granted summary judgment for Lafayette on Cormier's § 1983 claims premised on Haynes's actions, but noted that Louisiana law allows Cormier to assert *respondeat superior* claims against Lafayette as Haynes's employer. *See* La. Civ. Code Ann. art. 2320. Cormier does not challenge any of these rulings.

As to the police officers and Lafayette's responsibility for their actions, the district court ruled that Cormier had provided no evidence showing Guidry's involvement in any complained-of actions and granted summary judgment for Guidry on all claims. The district court also granted Lafayette summary

---

[2] Cormier also sued the Lafayette City Police Department, City Prosecutor's Office, and City Marshal's Office, as well as all individual defendants in their official capacities. These are all suits against Lafayette. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citation omitted)).

[3] The parties consented to proceed before a magistrate judge.

No. 11-31125

judgment on all § 1983 and state-law claims involving the police officers. Cormier raises no objections to these rulings.

Concerning Stelly and Martin, however, the district court concluded that, accepting the allegations in Cormier's complaint as true, the officers falsely arrested Cormier and contributed to the malicious prosecution and defamation against him, making qualified immunity inappropriate. The district court also rejected Stelly and Martin's argument that *Heck v. Humphrey*, 512 U.S. 477, 484-89 (1994), precludes § 1983 claims against them. The district court certified the order considering whether *Heck* applies, which this court accepted. *Cormier v. Lafayette City-Parish Consol. Gov't*, No. 11-90049 (5th Cir. Jan. 5, 2012). This appeal followed. We conclude that the Appellants prevail on all issues.[4]

## II. The District Court's Summary Judgment Ruling

This court reviews a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party. *See, e.g.*, *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 284-85 (5th Cir. 2006). "Unsubstantiated assertions, improbable inferences, and unsupported speculation," however, "are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We have jurisdiction over the *Heck* and qualified-immunity issues related to Cormier's § 1983 claims against Stelly and Martin individually. *See Mitchell*

---

[4] The Appellants contend that Cormier waived his state-law claims by failing to list them in an "Outline of Claims" as ordered by the district court. The district court rejected this argument in two footnotes in its summary judgment orders. District courts have wide discretion in controlling their dockets, including narrowing issues for trial. *See, e.g., G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 650-51 (7th Cir. 1989). We find no abuse of discretion in the district court's actions.

No. 11-31125

*v. Forsyth*, 472 U.S. 511 (1985) (denials of absolute or qualified immunity are appealable as of right). With respect to the state-law claims against Stelly and Martin and against Lafayette in its capacity as Haynes's employer, we have jurisdiction over the interlocutory appeal. Precedent makes clear that we have jurisdiction over "threshold" legal questions related to Cormier's state-law claims because the district court considered them in the order certified and accepted for interlocutory review. *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398-400 (5th Cir. 2010) (en banc). Our jurisdiction extends to "'all issues material to the [certified] *order*,'" not just the "'controlling *question*.'" *Id.* at 399 (emphasis added) (citation omitted). Here, the district court certified for interlocutory appeal an order that denied Stelly, Martin, and Lafayette's motions for summary judgment as to the state-law claims.

Of course, the exercise of jurisdiction over such claims remains discretionary. *Id.* at 399-400. We opt to do so here because resolving Stelly and Martin's appeal necessarily results in our deciding an issue dispositive of Cormier's state-law claims. As discussed below, the fact of Cormier's conviction establishes probable cause in the absence of any evidence to the contrary, and probable cause negates state-law claims for false arrest, malicious prosecution, and defamation. Moreover, a motions panel has already determined that the Appellants may proceed with this appeal, and the parties have fully briefed the issues related to Cormier's state-law claims. Accordingly, we perceive no benefit to piecemeal appeals on these points, and we will decide them here. *See id.*

**A. Heck *Bars § 1983 Claims Against Stelly and Martin Individually***

Cormier asserts three causes of action against Stelly and Martin individually under the guise of § 1983: for malicious-prosecution, defamation, and "false-imprisonment," which he also characterizes as "false-arrest." The principles announced in *Heck* preclude these claims. There, the Supreme Court considered whether a plaintiff could challenge via § 1983 his criminal conviction

and sentence, including "other harm[s] caused by actions whose unlawfulness would render a conviction or sentence invalid." 512 U.S. at 478, 483, 486.

The Court answered in the affirmative, but held that such claims are "cognizable" only if the plaintiff "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. Without that threshold showing, the Court went so far as to "deny the existence of a cause of action," *id.* at 489, even for claims that would indirectly, but "necessarily[,] imply the invalidity of [a plaintiff's] conviction or sentence." *Id.* at 487. In reaching that conclusion, the Court looked to tort law, specifically that related to malicious prosecution. *Id.* at 483-84.

We have applied *Heck* to bar claims for excessive force, false arrest, malicious prosecution, and other claims of unlawful seizure. *See Connors v. Graves*, 538 F.3d 373, 377-78 (5th Cir. 2008) (excessive force and unlawful seizure); *Wells v. Bonner*, 45 F.3d 90, 94-96 (5th Cir. 1995) (malicious prosecution and false arrest). We have specifically noted that false-arrest and malicious-prosecution claims challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity. *See Wells*, 45 F.3d at 95. Such attacks run afoul of *Heck*'s "'policy of finality.'" *Connors*, 538 F.3d at 378 (citation omitted).[5]

The specific crimes charged are irrelevant if the § 1983 claims would cause a civil judgment in the plaintiff's favor to "collide" with the criminal judgment. *Wells*, 45 F.3d at 95. It also is immaterial that the plaintiff was not convicted on every count charged. *Id.* False-arrest and malicious-prosecution claims—as

---

[5] To the extent Cormier brings conspiracy claims, the discussion that follows disposes of them. *See Connors*, 538 F.3d at 378 (noting that a "conspiracy claim is not actionable absent an actual violation of section 1983" (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995))).

No. 11-31125

attacks on probable cause—"focus on the validity of the arrest." *Id.* Thus, "[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause," and *Heck* applies. *Id.*; *cf. Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("find[ing] no basis in precedent or reason" for concluding "that the probable-cause inquiry is further confined to the known facts bearing upon the offense actually invoked at the time of arrest, and that (in addition) the offense supported by these known facts must be 'closely related' to the offense that the officer invoked" (citation omitted)).

Cormier has introduced no evidence showing that his disturbing-the-peace conviction has been reversed or otherwise called into question. Allowing Cormier to proceed with his false-arrest and malicious-prosecution claims against the officers under § 1983, then, risks "undermining the validity of his criminal conviction[]" because the same underlying events triggered those charges. *Connors*, 538 F.3d at 377. *Heck* thus bars those claims.

Because *Heck* applies, Cormier's defamation claims brought under § 1983 must also fail. "[D]amage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983." *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995) (citing *Paul v. Davis*, 424 U.S. 693, 710-12 (1976)). Cormier cannot satisfy this "stigma-plus-infringement" requirement, however, because applying *Heck* precludes using false arrest and malicious prosecution as predicate infringement claims. Accordingly, we conclude that Stelly and Martin should have been granted summary judgment on Cormier's § 1983 claims, and we need not address whether they are entitled to qualified immunity. *See Connors*, 538 F.3d at 378 (opting against further consideration of the defendants' qualified-immunity arguments in light of *Heck*'s application).[6]

---

[6] The district court hypothesized that the Louisiana Constitution's right-to-privacy provision could supply the predicate infringed interest. *See* La. Const. art. 1, § 5. Section

No. 11-31125

## *B. Cormier's State-Law Claims Necessarily Fail*

Having addressed Cormier's federal claims, we turn to his state-law claims for false arrest, malicious prosecution, and defamation.[7]

Under Louisiana law, "[a] claim for false arrest requires the following elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Richard v. Richard*, 74 So. 3d 1156, 1159 (La. 2011). A claim for malicious prosecution requires: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984).

Because Cormier's conviction stands, the lawfulness of his detention is presumed. *See Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. Unit B 1981). This presumption holds less force under Louisiana law, *see Jones*, 448 So. 2d at 1272 & n.5, but the record is devoid of any evidence that Stelly and Martin lacked an "honest and reasonable belief in the [defendant's] guilt" at the time charges were filed. *Id.* at 1272 (citing *Sandoz v. Veazie*, 30 So. 767 (La. 1901)). This negates

---

1983, however, protects only against the deprivation "'of rights secured by the Constitution or by *federal* law.'" *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012) (emphasis added) (citation omitted); *see also Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1325-26 (11th Cir. 2012) (collecting cases). In any case, Cormier does not clearly state a right-to-privacy claim, and it is doubtful that the alleged defamatory acts support the infringement of Cormier's federally-protected privacy interests. *See Paul*, 424 U.S. at 713 (rejecting argument that plaintiff's privacy interests were infringed by public dissemination of his arrest on a shoplifting charge); *Trade Waste Mgmt. Ass'n v. Hughey*, 780 F.3d 221, 234 (3d Cir. 1985) (observing that "records of criminal conviction and pending criminal charges" are "matters [that] are by definition public").

[7] Cormier also brought an intentional-infliction-of-emotional-distress claim, but he made no argument in furtherance of it either below or on appeal. To the extent he maintains such a claim, the failure of his other state-law claims forecloses finding that the Appellants intentionally engaged in "extreme and outrageous" or "atrocious" conduct "utterly intolerable in a civilized community." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

the second element of false arrest and the fourth element of malicious prosecution, and Stelly and Martin need only establish a lack of evidence as to one element to prevail on summary judgment. *See Brungardt v. Summitt*, 7 So. 3d 879, 887 (La. Ct. App. 4th Cir. 2009). Cormier's malicious-prosecution claim also fails because the underlying criminal case did not end in his favor. Thus, he cannot show that Stelly and Martin effectuated a false arrest or contributed to his alleged malicious prosecution.

Cormier's defamation claims against Stelly and Martin fare no better. Louisiana law precludes "coupl[ing]" defamation and malicious-prosecution or false-arrest claims when the underlying arrest and prosecution are not themselves "actionable." *Roche v. Aetna Cas. & Sur. Co.*, 303 So. 2d 888, 890 (La. Ct. App. 1st Cir. 1974) ("'The defamation of character alleged consists in merely making public statements that plaintiff was guilty of the crime for which he was arrested and prosecuted upon the affidavit of defendant. Manifestly the slander is merged in the prosecution, and, if the prosecution is not actionable, neither is the slander.'" (quoting *Dearmond v. St. Amant*, 4 So. 72, 72 (La. 1888))). Because Cormier's conviction and the presence of probable cause defeat his false-arrest and malicious-prosecution claims, his state-law defamation claim also must fail. Accordingly, we reverse the district court's denial of summary judgment on Cormier's state-law claims against Stelly and Martin.

Because Cormier asserts the same claims against Lafayette as Haynes's employer as he does against Stelly and Martin, the above analysis precludes his state-law claims against Lafayette. These claims also fail because the district court determined—and we agree—that Cormier introduced no evidence that Haynes brought false charges against Cormier or "had any role in the arrest or alleged defamation." In the absence of potentially tortious conduct by Haynes for which Lafayette could answer under *respondeat superior*, Cormier cannot

maintain his state-law claims against Lafayette.  We therefore reverse the district court's denial of Lafayette's motion for summary judgment.

## Conclusion

*Heck* bars Cormier's §1983 claims against Stelly and Martin.  Cormier's disturbing-the-peace conviction stands, and he introduced no evidence suggesting that the officers effectuated his arrest without probable cause.  Thus, his state-law claims against the officers and Lafayette, as Haynes's employer, fail.  Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.