[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12464
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2012
JOHN LEY
CLERK

D.C. Docket No. 0:10-cv-61666-WPD

YOLANDA MARTES,
MARIA RAMIREZ,
PAULA NEHER,
FELIX RAPALO,
SHAWNEEQUA ELLIOTT,
as Guardian for J.A., a minor,

Plaintiffs-Appellants,

versus

CHIEF EXECUTIVE OFFICER OF SOUTH BROWARD HOSPITAL
DISTRICT,
SECRETARY, FLORIDA AGENCY FOR HEALTH CARE
ADMINISTRATION,
SECRETARY, FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,
SOUTH BROWARD HOSPITAL DISTRICT,
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 15, 2012)

Before HULL and FAY, Circuit Judges, and BOWEN,[*] District Judge.

BOWEN, District Judge:

Yolanda Martes and four co-plaintiffs[1] appeal the district court's dismissal of their amended complaint against Florida government defendants South Broward Hospital District and its CEO ("SBHD"), the Florida Agency for Health Care Administration and its secretary ("AHCA"), and the Florida Department of Children and Families and its secretary ("DCF"). After review and oral argument, we affirm.

## I.  BACKGROUND

The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a federal aid program designed to provide federal funding to States that choose to reimburse certain costs of medical treatment for needy persons. See

---

[*] Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

[1] The co-plaintiffs are Maria Ramirez, Paula Neher, Felix Rapalo, and Shawneequa Elliot, as guardian for J.A., a minor.

2

Schweiker v. Hogan, 457 U.S. 569, 571-72, 102 S. Ct. 2597, 2600 (1982).

Participation is voluntary, but if a State decides to participate, it must comply with all federal statutory and regulatory requirements.  Participating States are required to provide medical assistance to the "categorically needy," a group that includes "individuals eligible for cash benefits under the Aid to Families with Dependent Children (AFDC) program, the aged, blind, or disabled individuals who qualify for supplemental security income (SSI) benefits, and other low-income groups such as pregnant women and children entitled to poverty-related coverage."  Pharma. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 651 n.4, 123 S. Ct. 1855, 1861 n.4 (2003) (citing 42 U.S.C. § 1396a(a)(10)(A)(I)).  At their option, States also may provide medical assistance to the "medically needy," which includes those "who meet the nonfinancial eligibility requirements for inclusion in one of the groups covered under Medicaid, but whose income or resources exceed the financial eligibility requirements for categorically needy eligibility."  Id. at 651 n.5, 123 S. Ct. at 1861 n.5 (citing 42 U.S.C. § 1396(a)(10)(C)).  Florida has elected to provide medical assistance to the medically needy as well as the categorically needy.

The plaintiffs are Medicaid "medically needy" program beneficiaries, who, according to their amended complaint, "were illegally billed for medical services

3

provided by the defendant South Broward Hospital District . . . and other non-party hospitals" when the hospitals (1) billed and received payment from defendant AHCA, which administers Florida's Medicaid program, and (2) billed the plaintiffs for the same services and in excess of the amount to which the defendant SBHD and other hospitals were entitled. The plaintiffs claim that this billing practice violated both 42 U.S.C. § 1396a(a)(25)(C), the "balance billing" provision of the federal Medicaid Act, and a similar Florida statute. As a result of the alleged illegal billing, the plaintiffs claim that they "were deluged with medical bills, hounded by collection agencies, had lawsuits filed against them, and had their credit destroyed."

Count I of the plaintiffs' four-count amended complaint alleges a cause of action under 42 U.S.C. § 1983. Count I claims that SBHD's billing violated 42 U.S.C. § 1396a(a)(25)(C) and a Florida statute and that AHCA and DCF violated these statutes by failing "to adequately supervise, monitor and enforce [the hospitals'] compliance" with the statutes. The plaintiffs seek damages, declaratory and injunctive relief. The remaining three counts assert state law negligence and fraud claims against defendants SBHD, AHCA and DCF.

The defendants each moved to dismiss the plaintiffs' complaint. The district court granted the defendants' motions to dismiss as to Count I on grounds

that 42 U.S.C. § 1396a(a)(25)(C) does not create an individual federal "right" enforceable under § 1983. Having dismissed Count I, the district court declined to exercise supplemental jurisdiction over the state law claims in Counts II through IV and dismissed those counts without prejudice. The plaintiffs appealed.

## II. STANDARD OF REVIEW

"We review the district court's grant of a motion to dismiss de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." DeYoung v. Owens, 646 F.3d 1319, 1324 n.2 (11th Cir. 2011).

## III. DISCUSSION

Section 1983 provides a private cause of action against any person who, under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 provides a remedy for violations of rights secured by federal statutory as well as constitutional law. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S. Ct. 2502, 2504 (1980). In order to seek redress through § 1983, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359 (1997) (emphasis in original); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 283, 122 S. Ct. 2268,

5

2275 (2002) ("[I]t is <u>rights</u>, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under [§ 1983].").[2] Private rights of action to enforce federal statutes enacted under the Spending Clause are particularly disfavored. <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Alderman</u>, 451 U.S. 1, 28, 101 S. Ct. 1531, 1545 (1981) ("In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.")

A three-part test determines whether Spending Clause legislation, such as the Medicaid Act, creates a right of action under § 1983: (1) Congress must have intended that the statute in question benefit the plaintiff; (2) the asserted right must not be so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must clearly impose a mandatory obligation upon the states. <u>Blessing</u>, 520 U.S. at 340-41, 117 S. Ct. at 1360. In <u>Gonzaga University v. Doe</u>, the Supreme Court clarified and narrowed the first prong, holding that "anything short of an unambiguously conferred right" does not

---

[2] Plaintiffs-Appellants have relied upon the decision in <u>Mallo v. Public Health Trust</u>, 88 F. Supp. 2d 1376 (S.D. Fla. 2000), which recognized a § 1983 right of action based upon a violation of § 1396a(a)(25)(C). However, as properly distinguished by the district court judge in this case, the <u>Mallo</u> decision was decided prior to <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 122 S. Ct. 2268 (2002), and relied upon a third party beneficiary analysis - an approach expressly disclaimed by the <u>Gonzaga</u> Court.

support an individual right of action under § 1983. Gonzaga, 536 U.S. at 283-84 & n.3, 122 S. Ct. at 2275-76 & n.3 ("Where a statute does not include this sort of explicit 'right- or duty-creating language,' we rarely impute to Congress an intent to create a private right of action.").[3] Further, if a federal statute's text and structure "provide some indication that Congress may have intended to create individual rights, and some indication it may not have, that means Congress has not spoken with the requisite 'clear voice.' Ambiguity precludes enforceable rights." 31 Foster Children v. Bush, 329 F.3d 1255, 1270 (11th Cir. 2003) (quoting Gonzaga, 536 U.S. at 280, 122 S. Ct. at 2273).

In Arrington v. Helms, 438 F.3d 1336 (11th Cir. 2006), this Court distilled Blessing's first prong, as modified by Gonzaga, to require that courts consider:

> whether the provision (1) contains individually focused, rights-creating language; (2) has an individual, rather than systemwide or aggregate, focus; and (3) lacks an enforcement mechanism for aggrieved individuals.

438 F.3d at 1345.[4] Applying these considerations, we held in Arrington that the

---

[3] In Gonzaga, the Supreme Court held that the Family Educational Rights and Privacy Act ("FERPA") did not create a right actionable under § 1983, concluding that FERPA was directed at the Secretary of Education's authority to spend funds and was not therefore "individually focused." 536 U.S. at 287, 122 S. Ct. at 2277.

[4] To be clear, Gonzaga declined to find a private right of action in FERPA because the relevant provisions "contain no rights-creating language, they have an aggregate, not individual focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to education institutions." 536 U.S. at 290, 122 S. Ct. at 2279.

provision of the Personal Responsibility and Work Opportunity Reconciliation Act

that controlled States' distribution of federal funds to needy families, 42 U.S.C.

§ 657, did not confer a private right of distribution of child support payments

enforceable under § 1983. Id. at 1346-47. Likening § 657 to the statute at issue in

Gonzaga, we explained that § 657 speaks to states rather than to individuals.

Though § 657 referred to "family" as the recipient of federal funds, the statute did

so "only to explain how the state generally must distribute . . . funds." Id. at 1346.

Accordingly, we made clear that in evaluating whether Congress intended to

establish a federal enforceable "right," courts must look to whether the statute

contains unambiguous "rights-creating" language. Id. at 1345.

After applying these legal standards, the district court here concluded that

the statute at issue, 42 U.S.C. § 1396a(a)(25)(C), does not contain "'rights-

creating' language that is individually focused." Section 1396a(a)(25)(C)

provides as follows:

> A State plan for medical assistance must -
>
> provide . . . that in the case of an individual who is entitled to
> medical assistance under the State plan with respect to a service for
> which a third party is liable for payment, the person furnishing the
> service may not seek to collect from the individual (or any financially
> responsible relative or representative of that individual) payment of an
> amount for that service (i) if the total of the amount of the liabilities of
> third parties for that service is at least equal to the amount payable for

that service under the plan (disregarding section 1306*o* of this title), or (ii) in an amount which exceeds the lesser of (I) the amount which may be collected under section 1396*o* of this title, or (II) the amount by which the amount payable for that service under the plan (disregarding section 1396*o* of this title), exceeds the total of the amount of the liabilities of third parties for that service . . . .

42 U.S.C. § 1396a(a)(25)(C) (emphasis added). The language in § 1396a(a)(25)(C) merely restricts service providers from seeking to collect certain payments from Medicaid recipients. Plaintiffs-Appellants, however, ask this Court to recognize an enforceable federal right against anyone, particularly Medicaid service providers such as defendant SBHD, who improperly bill Medicaid recipients under this provision.

Congress clearly knows how to confer federal rights within a statutory framework as evidenced by liability statutes located in the Truth in Lending Act, 15 U.S.C. § 1640(a) ("[A]ny creditor who fails to comply with any requirement imposed under this part . . . is liable . . . ."); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower . . . ."); and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ."). Congress has enacted no such liability language for the balance billing

9

provision of the Medicaid Act. In fact, Congress has not enacted liability language for any failure of a State to include in its Medicaid plan any required provision listed in § 1396a(a). Thus, we are left to determine whether Congress clearly intended to create an enforceable federal right.

Plaintiffs-Appellants point to the use of the word "individual" as evidence that the statute creates an individual right. They argue that the statute unambiguously protects individual Medicaid recipients from the predatory collection efforts of those who furnish covered services. When surveying a statute for rights-conferring language, however, incantation of the word "individual" is not talismanic. Indeed, the word "individual" does not even appear in the statutes recognized by the Gonzaga Court as creating individual rights, namely Title VI of the Civil Rights Act of 1964 ("No person in the United States shall . . . be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. 42 U.S.C. § 2000d) and Title IX of the Education Amendments of 1972 ("No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a)). See Gonzaga, 536 U.S. at 284 & n.3, 122 S. Ct. at 2275 & n.3 (emphasis in original). Rather, the relevant provisions of Title VI and Title IX are

singularly focused upon the individual protected, by stating "no person . . . shall be subjected to discrimination." Id. at 284, 122 S. Ct. at 2276.

In this case, § 1396a(a)(25)(C) does not focus on the individual Medicaid recipient; rather, the statute's focus is proscription of certain conduct by Medicaid service providers. First, we must read § 1396a(a)(25)(C) in the context of the two preceding subsections, § 1396a(a)(25)(A) and (B). In those two subsections, Congress requires that State Medicaid plans specifically obligate States to (1) ascertain the liability of third parties, 42 U.S.C. § 1396a(a)(25)(A) ("A State plan for medical assistance must . . . provide that the State . . . will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan . . . .") , and (2) seek reimbursement from legally liable third parties, id. § 1396a(a)(25)(B) ("A State plan for medical assistance must . . . provide . . . that in any case where [third party] liability is found to exist after medical assistance has been made available on behalf of the individual . . . , the State . . . will seek reimbursement for such assistance to the extent of such legal liability.").

Following from this, the next provision of § 1396a(a)(25), subsection (C), simply provides that where an individual is entitled to Medicaid services "for which a third party is liable for payment, the person furnishing the service may not

11

seek to collect from the individual." Id. § 1396a(a)(25)(C) (emphasis added).

Section 1396a(a)(25)(C) specifically requires a State Medicaid plan to prohibit service providers from collecting payment from a Medicaid patient if a third party is liable for the patient's medical expenses. Id. It is a prohibition against service providers billing Medicaid patients to the extent third parties are liable. See id.

Putting this provision in context, § 1396a(a)(25)(C) is formulated as a requirement of a Medicaid State plan as it relates to third party liability for payment of Medicaid patients' medical expenses. In other words, § 1396a(a)(25)(C) ensures that State Medicaid plans contain language which proscribes certain conduct of Medicaid service providers, i.e., balance billing. In this sense, § 1396a(a)(25)(C) does not create an individual right. The focus instead is upon the service provider and its billing practices.[5]   As the Supreme Court has noted, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" Gonzaga, 536 U.S. at 287, 122 S. Ct. at 2277 (quoted sources omitted).

---

[5] We note that the amended complaint in this case contains no allegation of third party liability. Thus, should an individual federal right be recognized under § 1396a(a)(25)(C), there is some question as to whether Plaintiffs-Appellants would even have standing to bring suit because the mechanism for liability under the statute - having been balance billed for amounts attributable to third parties - has not been triggered.

12

Our decision in 31 Foster Children v. Bush, 329 F.3d 1255 (11th Cir. 2003) further demonstrates that a statute's use of the term "individual" is not sufficient. This Court held in 31 Foster Children that the statute at issue did not create an individual right despite its use of the term "individual" with reference to the foster children plaintiffs. 329 F.3d at 1272. This Court explained that "[t]he references to individual children and their placements are made in the context of describing what the [foster child case review] procedure is supposed to ensure, and such provisions 'cannot make out the requisite congressional intent to confer individual rights enforceable by § 1983.'" Id. at 1272 (quoting Gonzaga, 536 U.S. at 289, 122 S. Ct. at 2278).[6] Similarly here, the reference to "individual" is made in the context of proscribing conduct by Medicaid service providers and does not make out the requisite congressional intent to create, much less unambiguously create, an enforceable federal right.

Prior to the Supreme Court's explication of "rights-creating" language in

_____

[6] The third Gonzaga factor also weighs against finding an individual right because § 1396a(a)(25)(C) has no enforcement scheme for aggrieved individuals. Indeed, as the Supreme Court has stated, the enforcement scheme for statutes enacted under the Spending Clause is withdrawal of federal funds, rather than private suit. See Pennhurst State Sch. & Hosp. v. Alderman, 451 U.S. 1, 28, 101 S. Ct. 1531, 1545 (1981) ("In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State."). The statute here articulates no means of federal or private enforcement of the terms of the statute. As a result, it is unlikely that Congress intended for this statute to be privately enforced.

13

Gonzaga, the Second Circuit addressed whether the third party liability provision of § 1396a(a)(25) conferred a federal right enforceable under § 1983 upon health care providers. See Wesley Health Care Ctr., Inc. v. DeBuono, 244 F.3d 280 (2d Cir. 2001). Relying upon the Blessing factors, the Second Circuit held that Congress did not intend the third party liability provisions of the Medicaid Act to confer a benefit upon health care providers. Id. at 284. The court explained that § 1396a(a)(25) seeks to protect the Medicaid program from paying for health care in situations where a third party has a legal obligation to pay for the care, calling the provisions duties rather than benefits. Id. The Second Circuit specifically noted that § 1396a(a)(25)(C) is "prohibitive: providers may not go after the individual receiving care in an effort to evade the difficulties of securing third party payment."[7] Id. In this respect, we similarly conclude that § 1396a(a)(25)(C) is cast as a defense to improper billing rather than an expressly conferred right for individual Medicaid recipients.

In short, the text and structure of § 1396a(a)(25)(C) do not focus on an individual's right to be free of improper balance billing. Rather, it speaks to the

_____

[7] We recognize that the Second Circuit in DeBuono examined whether § 1396a(a)(25) gave a healthcare provider a cause of action against the New York Medicaid program. Here, the question is whether that section provides an individual Medicaid patient with a cause of action against the healthcare provider. Nonetheless, DeBuono's discussion of the purposes of § 1396a(a)(25) also helps explain why the statute does not create an individual right.

14

obligations of the State and Medicaid service providers vis-à-vis third party liability. In other words, Congress has not spoken with the requisite unambiguous, clear voice to confer upon individual Medicaid recipients a federal right, a violation of which would be actionable under § 1983.

## IV. CONCLUSION

Upon concluding that 42 U.S.C. § 1396a(a)(25)(C) does not confer upon Plaintiffs-Appellants a federal right enforceable under § 1983, we **AFFIRM** the district court's decision to dismiss the amended complaint.